IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:     Case No: 10-41440

AG ENERGY RESOURCES, INC     Chapter 11

**DEBTOR'S RESPONSE TO PEOPLE'S NATIONAL BANK, N.A.'S OBJECTION TO VACATE DISMISSAL AND REINSTATE CHAPTER 11**

COMES NOW Debtor-in-Possession, Ag Energy Resources, Inc. ("*Debtor*"), and for its Response to Objection of People's National Bank, N.A. to Motion to Vacate Dismissal and Reinstate Chapter 11, states as follows:

1. Following the filing of its case on September 23, 2010 (the "*Petition Date*"), Debtor initially focused its attention on obtaining financing to recommence operations.

2. Debtor was established in 2005 in the business of standard corn to ethanol production. With the change in the economy, Debtor increased its investment to incorporate a milling system into the business to increase profit margins.

3. Subject to the liens of various creditors, Debtor owns the real estate located at 10163 Sugar Creek Road, Benton, IL where the facilities for Debtor's business are located (the "*Plant*").

4. Following the Petition Date, Debtor initially sought additional working capital in order to recommence operations at the Plant, but when Debtor determined it would not be able to work through the due diligence stage of a new loan and timely submit its request to this Court, Debtor switched its efforts to a sale of all its assets in order to pay its creditors in full and retain some of the equity from its assets.

5. Debtor switched its efforts to a complete sale of the Plant approximately 60 days before this Court's deadline to file a Chapter 11 Plan of Reorganization.

2810372\1

6. The argument of People's National Bank, N.A. (the **"Bank"**) that this Court should not extend the time to file a Plan of Reorganization because Debtor has not been operating is disingenuous.

7. But for the failure of the Bank to submit the paperwork necessary for a U.S.D.A. guaranteed loan for the additional working capital needed after a January 7, 2009 brownout, Debtor would have been operating.

8. In explanation, by late December 2008, Debtor had milled its first corn and produced 200 proof ethanol.

9. However, on January 7, 2009, a contractor for the City of Benton hit an underground electrical power supply to Debtor's plant causing a brownout power interruption to the plant while in production. The power interruption caused major damage to pumps, motors, sieve beads, as well as a loss of product within the system at the time. While making repairs and recovering from the incident, Debtor depleted its working capital and was unable to continue plant operations.

10. Following the brownout, Debtor met with the Bank to discuss possible sources for additional working capital in order to re-commence production.

11. As part of these discussions, the Bank ordered a new appraisal which was issued by Natwick Associates Appraisal Services on February 4, 2009, placing a value on the Plant in stabilized operation of $13,000,000 and placing a market value "as is" prior to stabilized operations of $12,700,000.

12. Debtor then received emails from the Bank indicating they were working on a plan for additional capital.

13. In February 2009, the Bank ordered an evaluation of the Plant from an independent consultant who was an alternative energy professor at Southern Illinois University – Edwardsville and instructor at the Corn to Ethanol Institute. The consultant determined the Plant could achieve the production goals necessary for a USDA guarantee with additional capital investment of approximately $125,000

14. On March 23, 2009, the U.S.D.A. issued a letter inviting the Bank to submit an application for working capital for Debtor in the amount of $1,500,000. However, the Bank never submitted the formal application. A copy of the USDA letter is attached hereto as **Exhibit "1"**.

15. On March 31, 2009, a representative of the Bank indicated the Bank had applied for the working loan and described how the money would be disbursed.

16. The Bank never submitted the U.S.D.A. loan application despite having received a positive report from Greg Guenther, an independent consultant hired by the Bank, that the plant could achieve production goals and expectations, allowing the U.S.D.A. 90% guaranty to become effective.

17. In addition, Sheldon Keyser, a former USDA representative and consultant with the Bank, also completed a feasibility update for the Bank in support of the viability of Debtor's operations.

18. Debtor then met with representatives from the Bank on April 9, 2009, and was informed the Bank would not renew existing loans nor would they honor a verbal commitment to loan additional funds under the U.S.D.A. guaranty.

19. On April 23, 2009, Debtor and the Bank entered into a Forbearance Agreement providing Debtor with additional time to pay the loans to the Bank in full.

20.     Subsequently, Debtor began searching for replacement lending and obtained a letter of intent from a new lender on October 7, 2009.  A copy of the letter of intent is attached hereto as **Exhibit "2"**.

21.     Despite requests for information from I-Street Global, the Bank did not supply the information to allow Debtor to move forward with the additional lending until February 2010.

22.     In January 2010, Debtor received a DCEO working capital grant in the amount of $750,000.  The working capital grant was sufficient to restart operations and would have supplied the necessary input of additional equity necessary for obtaining the U.S.D.A. guaranteed loan.

23.     The day after receiving confirmation that Debtor had received the grant funds, the Bank filed its Complaint for foreclosure on the Plant as well as other real estate.

24.     Debtor received the DCEO grant funds in late January 2010 and used the funds as follows:

    a.     Employ and train a workforce;

    b.     Complete repairs to equipment;

    c.     Extensive maintenance to components at facility;

    d.     Complete SOP;

    e.     Complete site work;

    f.     Install a scale house;

    g.     Complete sewer line installation;

    h.     Complete bathroom, plumbing, and lavatory;

    i.     Purchase and begin installation of overhead auger conveyer from grain storage to mills;

      j.      Install overhead screens at all three overhead doors to comply with food grade requirements;

      k.      Bring in engineer to adjust mills and train operators; and

      l.      Complete production certification required by U.S.D.A.

25.    Debtor continued to work with the Bank to obtain the USDA guaranteed loan.

26.    On March 10, 2010, counsel for the Bank confirmed the Bank would be willing to hold the foreclosure in abeyance until the end of April/early May to allow the Plant to get to capacity and then the Bank believed it would take approximately 30 – 45 days to rewrite the loans and obtain the USDA guaranty. A copy of counsel's March 10, 2010 email is attached hereto as **Exhibit "3"**.

27.    On April 6, 2010 and again on April 20, 2010, at the Bank's request, Debtor provided an update of operations indicating that as of April 20, 2010, Debtor was ahead of schedule.

28.    On April 27, 2010, the Bank's counsel request confirmation of production per minute and indicated the "bank would also like to hold a meeting to make sure that all of the closing requirements may be met." A copy of counsel's April 27, 2010 email is attached hereto as **Exhibit "4"**.

29.    On May 5, 2010, counsel for the Bank inquired as to whether Debtor would be able to attest to production in order to move things forward. A copy of counsel's May 5, 2010 email is attached hereto as **Exhibit "5"**.

30.    Following application of the DCEO grant funds, Debtor obtained the necessary production certification on May 18, 2010 and provided the certification to the Bank. A copy of the certification is attached hereto as **Exhibit "6"**.

31. Furthermore, on several occasion, the last being May 4, 2010, the USDA extended the deadline for submitting pursuant to the Conditional Commitment of a USDA guaranteed loan. A copy of the May 4, 2010 extension is attached hereto as **Exhibit "7"**.

32. Nevertheless, the Bank still did not submit the application for the U.S.D.A. guaranteed loan.

33. From January 2010 through May 2010, while Debtor was using the DCEO grant funds to re-commence production, Debtor continued the marketing of its products as following:

    a. Semo Milling, Cape Girardeau, Missouri – regarding potential exchange of flour and sale of course grits which would reduce Debtor's net feed stock costs approximately 50%;

    b. Siemer Milling, Teutopolis, Illinois – regarding clean germ purchases;

    c. Gilster-Mary Lee, Chester, Illinois – regarding purchase of corn meal and grits;

    d. Savanna Food, Savanna, Tennessee – regarding purchase of yellow and white corn meal;

    e. Metro Ag, Breese, Illinois – regarding the purchase of waste stream sugars;

    f. Pepsi Mid-America, Marion, Illinois – regarding the purchase of waste stream sugars;

    g. Abengoa, Mt. Vernon, Indiana – regarding the purchase of 200 proof and 190 proof ethanol;

    h. Center Ethanol, St. Louis, Missouri – regarding the purchase of 200 proof and 190 proof ethanol; and

      i.      Cereal By-Products, St. Louis, Missouri – regarding the purchase of animal feed/germ and bran;

34. Consequently, following application of the DCEO grant funds and the discussions with purchasers of grain by-product as well as finished ethanol product, Debtor stood ready to proceed with production but for the lack of the final funding from the Bank through a U.S.D.A. guaranteed loan.

35. Consequently, Debtor submits this Court would appropriately grant Debtor additional time to locate a purchaser of the Plant.

WHEREFORE, Debtor Ag Energy Resources, Inc., hereby requests this Court grant Debtor's Motion to Extend Time to File Chapter 11 Plan and for such other and further relief as this Court deems just and proper.

                      SANDBERG PHOENIX & von GONTARD P.C

By:    */s/ Keith D. Price*
        Keith D. Price, #4099 Fed Bar
        600 Washington Avenue - 15th Floor
        St. Louis, MO  63101-1313
        314-231-3332
        314-241-7604 (Fax)
        kprice@sandbergphoenix.com
        ***Attorneys for Debtor Ag Energy Resources, Inc.***

## **CERTIFICATE OF SERVICE**

      I, Keith D. Price, do hereby certify that I have caused to be served this date, via electronic filing transmission and/or U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Sabrina M. Petesch
Office of the United States Trustee
Becker Building, Room 1100
401 Main
Peoria, IL 61602
Sabrina.M.Petesch@USDOJ.gov
***Attorney for U.S. Trustee***

Brian Love
Hammond, Shinners, P.C.
7730 Carondelet, Suite 200
St. Louis, Missouri 63105
blove@hammondshinners.com
***Attorney for Carpenters District Counsel and Carpenters' Funds***

John L. Chullen
901 W. Washington St.
Benton, IL 62812
chullenlaw@frontier.com
***Member Unsecured Creditors Committee***

Charles Webster
500 West Main, POB 640
Benton, IL 62812
mrleadfoot@frontier.com
***Member Unsecured Creditors Committee***

Kenneth D. Sentel
15022 State Highway 34 E.
PO Box 483
Benton, IL 62812
sales@ksbit.com
***Member Unsecured Creditors Committee***

James Bruner
United Contractors Midwest, Inc.
3151 Robbins Road
PO Box 13420
Springfield, IL 62791
***Attorney for Freesen, a Division of
United Contractors Midwest, Inc.***

Cherie MacDonald
Greensfelder Hemker & Gale, PC
12 Wolf Creek Drive, Ste. 100
Belleville , IL  62226
ckm@greensfelder.com
***Attorney for People's National Bank***


THIS 15th day of  February , 2011.

                                            */s/Keith D. Price*
                                            Keith D. Price